## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD NICHOLSON | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  07-1380 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

## MEMORANDUM

LOWELL A. REED, Jr., Sr. J                                    FEBRUARY 25, 2008

      Before the court for consideration is plaintiff's brief and statement of issues in support of request for review (Doc. No. 5) and the response and reply thereto (Doc. Nos. 6, 7).  The court makes the following findings and conclusions:

      1.     On July 9, 2002, Edward Nicholson ("Nicholson") protectively filed for disability insurance benefits ("DIB") and social security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, alleging an onset date of July 1, 2001.  (Tr. 114-16; 141-45).  After Nicholson's first administrative hearing on October 23, 2003, the ALJ issued a decision that Nicholson was disabled beginning on April 11, 2003.  (Tr. 45-53).  After Nicholson requested review, on December 7, 2004, the Appeals Council remanded the case for further consideration.  (Tr. 56-60).  After a second administrative hearing was held on March 3, 2005, the ALJ determined Nicholson was disabled starting on April 21, 2003.  (Tr. 24-39).  The Appeals Council denied Nicholson's subsequent request for review.  (Tr. 6-8).  Pursuant to 42 U.S.C. § 405(g), on April 5, 2007, Nicholson filed his complaint in this court seeking review of that decision.

      2.     In his decision, the ALJ concluded that Nicholson's systemic lupus erythematosus ("SLE") was a severe impairment.  (Tr. 30 ¶ 4; 37 Finding 3).[1]  The ALJ further concluded that Nicholson's impairment did not meet or equal a listing, that prior to April 21, 2003, he retained the residual functional capacity ("RFC") to perform sedentary work with no exposure to excessive pollutants, and after April 21, 2003, he was unable to maintain regular attendance or work at a productive pace for a full day, and that he was disabled from April 21, 2003 onward.  (Tr. 30 ¶ 5; 35 ¶¶ 2-3; 37 ¶ 1; 37 Findings 5, 6; 38 Finding 17).

      3.     The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  It is more than a mere scintilla but may be less than a preponderance.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  If the

---

[1] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

      4.     Nicholson raises eight arguments in which he alleges that the determinations by the ALJ were either not supported by substantial evidence or were legally erroneous.  Because the Commissioner did not apply the proper legal standards and because his determination is not supported by substantial evidence, I must remand to allow the Commissioner to conduct the proper analysis.

      A.     Nicholson asserts that the ALJ improperly rejected medical evidence supporting a finding of disability from before April 21, 2003.  As the ALJ and the ME acknowledged, Nicholson was very ill from August 2001 until February of 2002, at which time he had been diagnosed with SLE and his medication allowed him to be "doing well with regard to his lupus." (Tr. 32 ¶ 3; 287; 796).  In fact, the ME testified that Nicholson was the most ill during that period.  (Tr. 796).  However, as 42 U.S.C. § 423(d)(1)(A) provides, a person will not be found disabled unless the person is unable to engage in substantial gainful activity for a continuous period that lasts at least 12 months or results in death.  The medical record reflects from February 2002 onward, Nicholson's lungs were clear, he was doing well with regard to his lupus, there was no evidence of pleural effusions, he had normal physical exams, no active disease, and did not require intervention beyond the medication he was taking.[2]  (Tr. 261; 264; 267; 268; 286; 318; 376; 378; 379; 380; 392; 402; 457; 459).  The medical evidence dated after April 21, 2003, demonstrates his doctors continued to find his lupus stable, his laboratory tests and physical exams normal, and his chest x-rays revealed no active disease.  (Tr. 433; 450; 659; 682).  Despite this, the ALJ found Nicholson disabled starting on April 21, 2003 based on a report from one of Nicholson's treating doctors, Lawrence Alwine, D.O. ("Dr. Alwine"), and a pulmonary function test from April of 2003.  (Tr. 34 ¶ 4).

      However, as discussed at the March 3, 2005 hearing, Dr. Alwine's check list report was internally inconsistent, resulting in it being a "very confusing RFC." (Tr. 815-17).  In fact, Dr. Alwine reported that Nicholson could walk for 2 hours at a time, but could only walk 1 hour total, and could stand and walk for 3 or 4 hours during a work day, but had to be in a reclining position for an entire work day with his legs elevated for 7 of those hours.  (Tr. 403-04).  Pursuant to 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1), an ALJ should "seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved."  Although Nicholson's attorney stated at the hearing that he tried to get another assessment from Dr. Alwine, there is no evidence the ALJ tried to get an explanation from Dr. Alwine and no clarifying assessment is contained in the record.  (Tr. 817).  As for the pulmonary function test from April 28, 2003, the ALJ cited to the finding of "moderate to severe reduction in inspiratory and expiratory pressures" as evidence of Nicholson's worsened condition, however, the resultant pulmonary restriction was found to be moderate on August 21, 2002 and mild to moderate on April 28, 2003 with similar numbers and percentages for the maximal respiratory pressures.  (Tr. 264-66; 426-28).  One of Nicholson's treating doctors, Robert Satriale, M.D. ("Dr. Satriale"), reported, in evaluation of the April 28, 2003 study, that Nicholson had an improvement in his vital capacity and diffusion as compared to the study from August 21, 2002.  (Tr. 426).  Nicholson's improvement between the August 21, 2002

---

[2]However, the court does note that Nicholson did have diminished breath sounds at the base of his lungs, Reynaud's phenomenon, and complained of exertional dyspnea.  (Tr. 318).  His treating doctor, Robert Satriale, M.D. ("Dr. Satriale"), stated that his exertional dyspnea was not changing and limited moderate activities.  (Tr. 402).

study and the April 28, 2003 study was noted by the Appeals Council in its remand on December 7, 2004 and referenced by the ALJ in his opinion.  (Tr. 28 ¶ 1; 58).

In addition to the ALJ's mistaken reliance on Dr. Alwine's report and the pulmonary function test from April 28, 2003, the ALJ misquoted the ME by stating the ME testified Nicholson would miss a significant amount of work, when, in fact, the ME testified that Nicholson could perform a sedentary job in a clean and temperate environment, and, although SLE can cause a person to miss a significant amount of work, the progress notes in the record did not demonstrate that that would occur here.  (Tr. 795).  I also note that the VE testified that a person of Nicholson's age, training, education, and experience, who could lift 10 pounds, stand/walk 2 hours, sit 6 or more hours, in a work environment without excessive pollutants could perform jobs that exist in significant numbers in the national economy.  (Tr. 813-14).  The ALJ determined that Nicholson was capable of performing this work prior to April 21, 2003. (Tr. 35 ¶ 2).  Inexplicably, the ALJ found that although Nicholson is only partially credible prior to April 21, 2003, he was apparently credible afterwards.  Likewise Dr. Alwine's three assessment forms filled out prior to April 21, 2003 were found not credible, however Dr. Alwine's inconsistent form from after April 21, 2003 demonstrated Nicholson was disabled.[3]  (Tr. 33 ¶ 3; 34 ¶ 4; 36 ¶ 4).  Thus, substantial evidence does not support the ALJ's finding that Nicholson's condition worsened as of April 21, 2003.  Thus, this case must be remanded for the medical evidence and the finding of the onset of disability to be reconsidered.

B.     The above analysis demonstrates that the ALJ failed to fully consider the record before him, and thus, the court will not make a ruling on Nicholson's remaining arguments regarding (1) the ALJ failing to find other impairments severe and evaluating their combined effect, (2) whether the ALJ assessed the correct onset date, (3) whether the ALJ improperly discounted the plaintiff's credibility and the testimony of his sister, (4) whether Nicholson was capable of performing sedentary work prior to April 21, 2003, and (5) whether or not the hypothetical contained all of the limitations supported by the record.

C.     However, I will note for the purpose of the remand that plaintiff's argument that the ALJ improperly relied on the Grids was disingenuous, as the ALJ stated, "[s]trict application of Rule 201.27 is not possible, however, as the claimant has non-exertional limitations which narrow the range of sedentary work that the claimant is capable of performing" and used a VE to identify what jobs Nicholson was capable of performing prior to April 21, 2003.  (Tr. 35 ¶ 6; 36 ¶ 1).  Additionally, the ALJ stated in finding of fact 13 that the grids "would direct a conclusion of 'not disabled,'" however, the ALJ noted in finding of fact 14 that Nicholson was unable to perform the full range of work at the sedentary level, and thus, relied on the testimony of the VE.  (Tr. 38).

5.     Therefore, this case must be remanded in order for the ALJ to supplement his decision in a manner consistent with this opinion.

An appropriate Order follows.

---

[3]I note this was also an issue in the Appeal Council's December 7, 2004 remand, because the Appeals Council stated that the ALJ did not point to evidence of a worsened condition or explain why Nicholson's subjective complaints were given more weight for the period after April of 2003.  (Tr. 28 ¶ 1; 58).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDWARD NICHOLSON                  :          CIVIL ACTION
                                  :
          v.                      :          NO.  07-1380
                                  :
MICHAEL J. ASTRUE,                :
Commissioner of Social Security   :

<u>**ORDER**</u>

          AND NOW, this 25th day of February, 2008, upon consideration of the brief in support of

review filed by plaintiff and response and reply thereto (Doc. Nos. 5; 6; 7) and having found after careful

and independent consideration of the record that the Commissioner did not apply the correct legal

standards and that the record does not contain substantial evidence to support the ALJ's findings of fact

and conclusions of law, it is concluded that the action must be remanded to the Commissioner under

sentence four of 42 U.S.C. § 405(g).  Therefore, for the reasons set forth in the memorandum above, it is

hereby **ORDERED** that:


1.     **JUDGMENT IS ENTERED REVERSING THE DECISION OF THE
       COMMISSIONER OF SOCIAL SECURITY** and the matter is **REMANDED** for
       further proceedings consistent with this adjudication; and

2.     The Clerk of Court is hereby directed to mark this case closed.




                                   S/Lowell A. Reed, Jr.
                                   LOWELL A. REED, JR., Sr. J.